**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cornerstone National Insurance Company, | No. CV-13-00292-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| James Itule, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Dismiss, (Doc. 12). For reasons specified below, the Court denies the Motion.

## BACKGROUND

On January 5, 2010, a collision occurred between Barbara Contreras and Defendant James Itule after Contreras allegedly failed to stop at a red light. (Doc. 22 at 2.) Plaintiff Cornerstone National Insurance Company ("Cornerstone") insured Contreras's vehicle with a policy that limits personal injury liability to $15,000 per person. (*Id*.) Following the collision, Itule sent a conditional demand letter to Cornerstone demanding, inter alia, the bodily injury limits of $15,000. (Doc. 12 at 1.) The letter further requested documents related to the policy as well as affidavits regarding the assets of the driver and nature of her travel. (*Id.* at 2.) Cornerstone tendered the policy limits but did not send the other requested documents. (*Id.* at 3.) On May 17, 2010, Itule filed suit against Contreras in Maricopa County Superior Court to recover damages beyond the $15,000 tendered by Cornerstone. (Doc. 22 at 2.) Cornerstone filed an interpleader action

1  stating that it had tendered the $15,000 policy limits into the court. (Doc. 1 at 4.) It also
2  requested the state court to find that Cornerstone did not act in bad faith towards
3  Contreras. (Doc. 12 at 6.) The state court declined to rule on the request and consolidated
4  the interpleader action with the underlying case on November 23, 2010. (*Id.* at 4–5.)
5  Cornerstone was dismissed without prejudice from the case after it deposited the $15,000
6  policy limits with the clerk of the court. (Doc. 1 at 5.)

7  After initiation of the suit, Itule and Contreras entered into an Irrevocable
8  Settlement Agreement (the "Agreement") on December 28, 2012, whereby Contreras
9  withdrew her answer to Itule's state court complaint, allowed a default judgment in
10 Itule's favor of $950,000, and assigned any breach of contract or breach of good faith
11 claims that Contreras may have against Cornerstone to Itule in exchange for Itule's
12 agreement not to execute the state court judgment against Contreras. (*Id.* at 3.)
13 Cornerstone filed this declaratory judgment action against Itule on January 11, 2013. (*Id.*)
14 Cornerstone requests the Court to declare that (1) Cornerstone met all its duties and
15 obligations to Contreras under the policy and (2) Contreras breached the cooperation
16 clause of the policy by confessing judgment and entering into the Agreement. (*Id.* at 7–
17 9.) Alternatively, Cornerstone requests a declaration that the stipulated amount of
18 $950,000 to settle the underlying injury claim was unreasonable. (*Id.* at 7.) Cornerstone
19 further requests attorneys' fees and costs. (*Id.*) Itule now moves to dismiss Cornerstone's
20 Complaint for lack of jurisdiction.

21                            **DISCUSSION**
22 **I.    SUBJECT MATTER JURISDICTION**
23    **A.    Legal Standard**
24 The Court may reach the merits of a dispute only if it has jurisdiction to do so.
25 *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93–95 (1998). Jurisdiction is limited
26 to subject matter authorized by the Constitution or by statute. *Kokkonen v. Guardian Life*
27 *Ins. Co.,* 511 U.S. 375, 377 (1994). Federal courts also have diversity jurisdiction over
28 cases where the amount in controversy exceeds $75,000 and the parties are citizens of

different states. *See* 28 U.S.C. § 1332(a).

Under Rule 12(b)(1), a defendant may challenge at any time a federal court's jurisdiction to hear a case. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). In resolving a motion under Rule 12(b)(1), the Court is not limited to the allegations in the pleadings if the "jurisdictional issue is separable from the merits of the case." *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987). "The court may view evidence outside the record, and no presumptive truthfulness is due to the complaint's allegations that bear on the subject matter [jurisdiction] of the court." *See Greene v. United States,* 207 F. Supp. 2d 1113, 1119 (E.D. Cal. 2002) (citing *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983)). While lack of subject matter jurisdiction is an affirmative defense, "[t]he party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir. 1990) (internal citation omitted).

### B. Amount in Controversy

The Parties have stipulated to diversity of citizenship under 28 U.S.C. § 1332(a)(1). They dispute, however, whether Cornerstone's claim satisfies the amount in controversy requirement. The requirement is satisfied if a plaintiff makes a good faith claim that damages exceed $75,000. *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). A good faith claim must be objectively reasonable—if it appears to a legal certainty that the claim is for less than the jurisdictional amount it must be dismissed. *Geographic Expeditions, Inc. v. Estate of Lhotka,* 599 F.3d 1102, 1106 (9th Cir. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)).

Cornerstone contends that it brings this action because the settlement amount of $950,000 contained in the Agreement exposes it to liability above the jurisdictional requirement of $75,000. In challenging jurisdiction, Itule asserts only that "plaintiff's declaratory judgment request asks the Court to limit its indemnification of Contreras to $15,000, [so] the Court does not have subject matter jurisdiction." (Doc. 12 at 5.) But the amount in controversy is determined by "the value of the right to be protected or the

extent of the injury to be prevented," not by the value of the declaratory relief sought. *Jackson v. Am. Bar Assoc.*, 538 F. 2d 829, 831 (9th Cir. 1976). Cornerstone's claim arises from its potential liability to Itule based on the Agreement, and not from the $15,000 limit on Contreras's policy with Cornerstone. Itule has not shown to a legal certainty that the value of the claim cannot exceed $75,000. Accordingly, the amount in controversy satisfies the statutory requirement.

## II. DECLARATORY JUDGMENT

### A. Legal Standard

The Federal Declaratory Judgment Act ("FDJA") states that "[i]n a case of actual controversy within its jurisdiction [with noted exceptions] . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The FDJA "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). As the Ninth Circuit has explained, "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Amer. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir. 1995) (stating that "the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority'") (internal citation omitted), *overruled on other grounds by Gov't. Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1227 (9th Cir. 1998).

When determining whether to abstain from an FDJA action, the Ninth Circuit considers the factors set out by the Supreme Court in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942). "The district court [1] should avoid needless determination of state law issues; [2] it should discourage litigants from filing declaratory actions as a means of forum shopping; and [3] it should avoid duplicative litigation." *Dizol*, 133 F.3d at 1225 ("The *Brillhart* factors remain the philosophical touchstone for the district court.") (internal citation omitted). The *Brillhart* court explained that

"[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties" and that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." 316 U.S. at 495.

The *Brillhart* factors are not exhaustive, and courts should also consider (1) whether the declaratory action will settle all aspects of the controversy; (2) whether the action will serve a useful purpose in clarifying the legal relations at issue; (3) whether the action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; (4) whether the use of the action will result in entanglement between the federal and state court systems; (5) the convenience to the parties; and (6) the availability and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225 n.5.

### B. Abstention Factors

#### 1. Needless Determination of State Law Issues

Insurance coverage is fundamentally a question of state law and "federal courts should decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court unless there are circumstances present to warrant an exception to that rule." *Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 798–99 (9th Cir. 1995), *overruled in part on other grounds by Dizol*, 133 F.3d at 1227 (internal citation omitted). The Ninth Circuit has emphasized the general rule that insurance coverage actions belong in state rather than federal court and "the traditional rule that 'states ha[ve] a free hand in regulating the dealings between insurers and their policyholders.'" *Karussos*, 65 F.3d at 799 (citing *SEC v. National Securities, Inc.*, 393 U.S. 453, 459 (1969)).

Cornerstone seeks judgment as to whether Contreras breached the cooperation clause of its insurance policy by entering into a settlement agreement with Itule. Further, Cornerstone requests a declaration that it "met all its duties and obligations to Contreras under the policy." (Doc. 1 at 7.) Both of these requests involve state law issues. *See Ariz.*

*Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 138, 735 P.2d 451, 460 (1987); *Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, 148, 98 P.3d 572, 583 (Ct. App. 2004). Thus, a determination in this case could produce results that conflict with the state courts' well-developed treatment of those issues and serve to entangle the two systems. This factor favors dismissal.

### 2.     Forum Shopping

The mere act of invoking federal jurisdiction when it is proper does not evince forum shopping. *See First State Ins. Co. v. Callan Associates, Inc.*, 113 F.3d 161, 162 (9th Cir. 1997) ("Although occasionally stigmatized as 'forum shopping,' the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III.") Yet jurisdiction for actions brought pursuant to the FDJA is discretionary and the Court must decide whether it is proper in this case. 28 U.S.C. § 2201(a); *Wilton*, 515 U.S. at 288.

The Ninth Circuit has instructed that "federal courts should generally decline to entertain reactive declaratory actions." *Dizol*, 133 F.3d at 1225. In *Continental Casualty Co. v. Robsac Industries*, an insurer filed a declaratory judgment action in federal court "during the pendency of a non-removable state court action presenting the same issues of state law." The court held that the insurer did so merely to obtain "a tactical advantage from litigating in a federal forum" and that the "defensive or reactive" nature of the insurer's action warranted dismissal. 947 F.2d 1367, 1371–72 (9th Cir. 1991), *overruled in part on other grounds by Dizol*, 133 F.3d at 1220.  In part, Cornerstone requests a determination that it met all its duties and obligation to Contreras. In some respects, that is similar to the determination Cornerstone requested in its interpleader action. There, it requested the state court to find as a matter of law that Cornerstone did not act in bad faith towards Contreras. (*See* Doc. 12 at 6.) The state court declined to make such a determination and instead consolidated the interpleader action with the tort action, ultimately dismissing Cornerstone from the action without prejudice after it deposited the policy limits with the court. Because the state court declined to rule on the merits of the

issue and it is no longer pending in the state action, Cornerstone's request in this Court cannot be construed as forum shopping or reactive. This factor does not favor dismissal.

### 3. Duplicative Litigation

"If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225 (citing *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1366-67 (9th Cir. 1991)). The Ninth Circuit has interpreted broadly the existence of "parallel state proceedings." In *American National Fire Insurance Co. v. Hungerford,* the court approved of the holding that a federal action parallels a state action if "the ultimate legal determination in each depends upon the same facts" and if "there is an alternate state remedy by which the legal determination sought in the federal declaratory judgment action may be made on the basis of a well-developed factual record." 53 F.3d 1012, 1017 (9th Cir. 1995), *overruled in part on other grounds by Dizol*, 133 F.3d at 1225 (citing *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278–79 (6th Cir. 1990)). That is true even if the pleadings in the federal and state actions present different legal issues. *Id*.

Cornerstone contends that the issues to be litigated in this declaratory judgment are distinct from the issues in state action. Cornerstone primarily relies on *Allstate Ins. Co. v. Herron* in which the Ninth Circuit approved a declaratory judgment granted while tort issues arising under the same facts were litigated in state court. 634 F.3d 1101, 1107–08 (9th Cir. 2011). Because the declaratory action in *Allstate* concerned only contractual issues, the court found no risk of duplicative litigation. *Id*. at 1108. Cornerstone's Complaint likewise requests determination based on the insurance policy under facts similar to those in *Allstate*. A state remedy for declaratory relief exists. *See* A.R.S. § 12-1831. But Cornerstone is longer a party to the state action and whether Contreras breached the cooperation clause or Cornerstone fulfilled its duties and obligation to Contreras are not issues before the state court.

Itule contends that the state court litigation is ongoing and the issues involved in

Cornerstone's complaint could be resolved in that action. Cornerstone, however, requests judgment on issues which the state court has declined to rule on and are no longer before it. Thus, this factor does not favor dismissal.

### E. Other Factors

The additional factors outlined in *Dizol* for determining whether to exercise jurisdiction do not meaningfully impact the jurisdictional analysis. Itule contends that a declaratory judgment will not settle all aspects of the controversy because additional issues could arise under the Agreement, leading it to seek further damages against Contreras. But the risk of "piecemeal" litigation is minimal because although both cases arise under the same facts, they present distinct issues. That eliminates the possibility of inconsistent legal determinations. Regarding convenience of the parties, both Itule and Cornerstone are residents of Arizona and neither party is caused undue hardship by appearing in federal court. The Court has subject matter jurisdiction but retains discretion whether to exercise jurisdiction. Balancing the *Brillhart* and *Dizol* factors, the Court will not dismiss Cornerstone's Complaint.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 12) is **DENIED.**

Dated this 12th day of August, 2013.

_____
G. Murray Snow
United States District Judge