**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cornerstone National Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>James Itule,<br><br>Defendant. | No. CV-13-00292-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Judgment on the Pleadings (Doc. 32). On September 9, 2014, the Court converted the Motion into a Motion for Summary Judgment pursuant to Federal Rule Civil Procedure 56, allowing the parties to submit additional materials. *See* Fed. R. Civ. P. 12(d). (Doc. 52.) For reasons specified below, the Court now grants the Motion.

## BACKGROUND

On January 5, 2010, a collision occurred between Barbara Contreras and Defendant James Itule after Contreras allegedly failed to stop at a red light. (Doc. 1 ¶¶ 8–9; Doc. 25 ¶¶ 8–9.) Plaintiff Cornerstone National Insurance Company ("Cornerstone") insured Contreras's vehicle with a policy (the "Policy") that limits personal injury liability to $15,000 per person. (Doc. 1 ¶¶ 10; Doc. 25 ¶¶ 10.) The Policy contains a cooperation provision requiring Contreras to cooperate with Cornerstone in the investigation, settlement, or defense of any claim or lawsuit when seeking coverage. (Doc. 1 ¶ 31; Doc. 25 ¶ 31.) On April 27, 2010, Itule sent a demand letter to Cornerstone demanding, among other things, an affidavit from Contreras attesting to certain

information, including the extent of her assets, checks for all applicable Policy limits, and a bodily injury release form for Itule to sign. (Doc. 1 ¶ 12; Doc. 25 ¶ 12.) The demand letter specifically stated that sending a release for Itule's signature without sending the settlement funds, would "be taken as a counter to our offer, and will not be acceptable." (Doc. 55 ¶ 3; Doc. 58 ¶ 3.) The letter gave a deadline of May 17, 2010 to comply. (Doc. 1 ¶ 13; Doc. 25 ¶ 13.)

On May 14, 2010 Cornerstone requested an extension in the deadline until May 21, 2010. (Doc. 54 ¶ 3.) In a letter dated May 17, 2010, Cornerstone offered to pay the applicable Policy limit of $15,000 and provide the release form for Itule to sign, but did not send a check or the asset affidavit from Contreras. (Doc. 54. ¶ 4; Doc. 55 ¶ 12.) On May 17, 2010, Itule filed suit against Contreras (the "Tort Action"). (Doc. 55 ¶ 18.) On May 18, 2010, Itule's counsel sent a letter via fax denying Cornerstone's May 14, 2010 request for an extension of the deadline. (Doc. 37-1 at 15.) On the same day, Itule's counsel sent a letter to Cornerstone acknowledging the offer of the $15,000 policy limit, but rejecting it for falling short of the demand letter terms. (Doc. 37-1 at 37.) Also on May 18, 2010, Cornerstone mailed a check for the $15,000 policy limit to Itule's counsel. (Doc. 55 ¶ 14.) Itule's counsel rejected this check. (*Id*. ¶ 17.)

Cornerstone retained an attorney to defend Contreras in the lawsuit filed by Itule. (Doc. 1 ¶ 20; Doc. 25 at ¶ 20.) On August 18, 2010, Cornerstone filed an interpleader action, naming multiple medical providers who had claims in excess of the policy limits and stating that it was ready and willing to pay the $15,000 policy limits at issue in the Tort Action into the court. (Doc. 1 ¶¶ 21–22; Doc. 25 ¶ 21–22; Doc. 54 ¶ 12.) The state court consolidated the interpleader action with the Tort Action on November 23, 2010. (*Id.* at 4–5.) On December 14, 2011, Cornerstone was dismissed without prejudice from the case on the condition it deposit the $15,000 policy limits with the clerk of the court, which it did on November 2, 2011. (Doc. 54-1 at 28–38; *see* Doc. 1 ¶ 24, Doc. 25 at ¶ 24.)

On December 28, 2012, Itule and Contreras entered into an Irrevocable Settlement

Agreement (the "Settlement Agreement"), whereby Contreras withdrew her answer to Itule's state court complaint, allowed a default judgment in Itule's favor of $950,000, and assigned any breach of contract or breach of good faith claims that Contreras may have against Cornerstone to Itule in exchange for Itule's agreement not to execute the state court judgment against Contreras. (Doc. 1 ¶ 26–28; Doc. 25 ¶ 26–28.) Cornerstone filed this declaratory judgment action against Itule on January 11, 2013. (Doc. 1.) Cornerstone requests the Court to declare that (1) Cornerstone met all its duties and obligations to Contreras under the policy; and (2) Contreras breached the cooperation clause of the policy by confessing judgment and entering into the Agreement. (*Id.* at 7–9.) Alternatively, Cornerstone requests a declaration that the stipulated amount of $950,000 to settle the underlying injury claim was unreasonable. (*Id.* at 7.) Cornerstone further requests attorneys' fees and costs. (*Id.*) Cornerstone filed a Motion for Judgment on the Pleadings for its claims on January 6, 2014. (Doc. 32.) The Court will evaluate that Motion, and the additional submissions by the parties[1], as a Motion for Summary Judgment. (Doc. 52.)

## DISCUSSION

**I.   Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

---

[1] Itule's Response (Doc. 56) to Cornerstone's Supplemental Brief (Doc. 55) attempts to introduce an affidavit of an attorney, Frederick Berry, as an expert witness, providing his opinion regarding Cornerstone's duty of good faith and fair dealing. (Doc. 56-1.) "An expert witness cannot give an opinion as to [his] legal conclusion." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *see also, DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005). The purported expert witness opinion from Frederick Berry consists almost entirely of legal conclusions. (Doc. 56-1 at 5–10.) In addition, it was not filed until the Defendant's Response. The Court did not authorize Replies. As such, it is stricken.

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (original emphasis omitted) (quoting *Anderson*, 477 U.S. at 250).

The interpretation of an insurance contract is a question of law to be determined by the court. *Sparks v. Republic National Life*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (Ariz. 1982). The provisions of an insurance contract are interpreted according to their plain and ordinary meaning. *National Bank of Arizona v. St. Paul Fire and Marine Insurance Co.*, 193 Ariz. 581, 584, 975 P.2d 711, 713 (App. 1999).

**II.  Analysis**

   **A.  Validity of Settlement Agreement**

For the Settlement Agreement between Contreras and Itule to be valid, Cornerstone must have first breached one of its obligations to Contreras under the Policy. *Arizona Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 137, 735 P.2d 451, 459 (1987). Contreras' policy contains a standard cooperation provision whereby anyone seeking coverage is required to cooperate with Cornerstone in the investigation, settlement, or defense of any claim or lawsuit. (Doc. 1 ¶ 31; Doc. 25 ¶ 31.) A cooperation clause in a liability insurance contract "is used to protect the insurer's right to a fair adjudication of the insured's liability and to prevent collusion between the insured and the injured person." *Helme*, 153 Ariz. at 136, 735 P.2d at 458. Under Arizona law, an insured is justified in breaching the cooperation clause when an insurer has violated their contractual agreement and "flatly refused to defend" an insured. *Damron v. Sledge*, 105 Ariz. 151, 154, 460 P.2d 997, 1000 (1969). Thus, when an insurer's breach, either actual or anticipatory, leaves the insured exposed to excess personal judgment, "the

insured is generally held to be freed from his obligations under the cooperation clause." *Helme*, 153 Ariz. at 137, 735 P.2d at 459. In these situations, the insured may enter into a settlement agreement with a claimant and assign the insured's rights to recover against the insurer to the claimant, often called "*Damron* agreements." *Id*. at 138, 735 P.2d at 460.[2]

Insurers owe their insureds the express duty to indemnify and defend, along with the implied duty of good faith. *Waddell v. Titan Ins. Co., Inc.*, 207 Ariz. 529, 533, 88 P.3d 1141, 1145 (App. 2004). Included in the duty of good faith is the duty to consider settlement offers made and give "equal consideration of the comparative hazards" before rejecting a settlement offer. *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 260, 792 P.2d 719, 723 (1990). Itule alleges that Cornerstone

> breached the duty of good faith and fair dealing owed to Contreras by refusing or failing to settle the claim presented by defendant for the policy limits within the time limit provided by, *inter alia*, failing to deliver to defendant counsel's office no later than May 17, 2010, the settlement check and affidavit of assets which were material provisions of the time limited settlement demand.

(Doc. 25 ¶ 42.) Itule's answer alleges no other facts for the basis of a breach of Cornerstone's good faith duty to Contreras.

The extent to which *Damron* agreements are allowed is illustrated by the history of the action in Arizona. In *Damron*, "[b]oth insurance companies had flatly refused to defend [the insured]," requiring him to run up considerable attorney's fees and expenses. *Damron*, 105 Ariz. at 154, 460 P.2d at 1000. The *Damron* court deemed this a sufficient

---

[2] In *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 118, 741 P.2d 246, 251 (1987), the Arizona Supreme Court also recognized the right of an insured to enter into a *Damron* agreement when an insurer defended the insured, but under a reservation of rights. *Id*. Here, there is no claim that Cornerstone asserted a reservation of rights, or attempted in any way to dispute coverage for Contreras. As the Arizona Court of Appeals pointed out, it is taking *Morris* too far to claim that "whenever an insured faces potentially catastrophic excess liability, she is free to sign a *Damron* agreement and the insurer will be bound by the resulting liability." *State Farm Mut. Auto. Ins. Co. v. Peaton*, 168 Ariz. 184, 191, 812 P.2d 1002, 1009 (App. 1990).

breach by the insurer to justify the insured breaking the cooperation clause agreement. *Id*. In *Helme*, a *Damron* agreement was justified because the insurer "denied the full extent of its potential financial responsibility" by telling "its insureds that it would pay only one covered claim." *Helme*, 153 Ariz. at 137, 138, 735 P.2d at 459, 460. In *Clearwater*, the insurer "refused three offers of settlement within the policy limits" while the insured "was not notified of these offers due to [the insurer's] internal policy not to inform insureds of settlement offers less than the policy limit." *Clearwater*, 164 Ariz. at 257, 792 P.2d at 720. The Supreme Court of Arizona recognized that insurers could breach their duty of good faith by failing to consider the comparative hazards of rejecting settlement offers within the policy limits, including the financial risk to the insured. *Id*. at 260, 792 P.2d at 723. This duty arises from the fact that the insurer's control over the defense puts the insurer "in a position to expose the insured to a judgment in excess of the policy limits through its unreasonable refusal to settle a case." *Id*. However, the Court in *Clearwater* never contemplated a breach by an insurer that failed to meet a plaintiff's demand deadline by one day or who presented a counter offer to a request for settlement.

Itule cites *Miel v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 104, 110, 912 P.2d 1333, 1339 (App. 1995) for the proposition that "an insurer's policyholder occupies no contractual or fiduciary relationship with the insurer and may set a time limit for acceptance of a settlement offer, even if it is arbitrary or unreasonable." (Doc. 36 at 7.) But this quotation leaves off the next sentence in *Miel*: "On the other hand, an insurer that allows such a time limit to expire does not necessarily act in bad faith." *Miel*, 185 Ariz. at 110, 912 P.2d at 1339. The court in *Miel* explicitly stated that "a cause of action based solely on negligence which does not rise to the level of bad faith does not lie." *Id.* at 111, 912 P.2d at 1340. The Arizona Supreme Court established this bad faith standard in *Rawlings*:

> In insurance cases we believe the culpable conduct is an intentional act [distinguished from inadvertence, loss of

>papers, misfiling of documents, negligent or not] by which the insurer fails to provide the insured with the security and protection from calamity which is the object of the relationship. The "intent" required here is an "evil hand"–the intent to do the act. Mere negligence or inadvertence is not sufficient—the insurer must intend the act or omission and must form that intent without reasonable or fairly debatable grounds.

*Rawlings*, 151 Ariz. at 160, 726 P.2d at 576 (internal citations omitted).

In *Peaton*, counsel for the injured party demanded that in exchange for a release from liability for the insured, the insurer must pay the policy limit by a certain day, provide written proof of the policy limit, and submit a financial statement of the insured's assets. *State Farm Mut. Auto. Ins. Co. v. Peaton*, 168 Ariz. 184, 191, 812 P.2d 1002, 1009 (App. 1990). Counsel for the insurer agreed to tender the policy limit, but not the financial statement, and also requested proof of certain details regarding the injured party's status. *Id.* at 187, 812 P.2d at 1005. Negotiations between the parties continued. *Id.* at 188, 812 P.2d at 1006. In the negotiations, all offers and counteroffers included payment of the policy limit. *Id.* Counsel for the injured party eventually rejected the last offer from the insurer and sought to reach a *Damron* agreement with the insured. *Id.* The *Peaton* court found that signing the *Damron* agreement was a breach of the cooperation clause because "the insured never faced the possibility that [the insurer] might pay nothing if she was found liable. To the contrary, [the insurer] had continually offered its policy limits." *Peaton*, 168 Ariz. at 192, 812 P.2d at 1010.

Here, as in *Peaton*, Cornerstone has continually offered to pay its policy limit. *See* Doc. 1 ¶¶ 17, 19, 21, 24. Though it failed to satisfy the particular requirements of a settlement demand from Itule, there is no allegation that Cornerstone ever refused an offer of settlement, refused to defend Contreras, or reserved a right to contest liability. Cornerstone attempted to settle for the policy limits with Itule on the deadline of Itule's demand, but failed to provide an actual check for the policy limits that day. (Doc. 54. ¶ 4; Doc. 55 ¶ 12.) It provided the check the next day. (Doc. 55 ¶ 14.) This behavior does

not rise to the level of bad faith. *See*, *Peaton*, 168 Ariz. at 192, 812 P.2d at 1010; *Miel*, 185 Ariz. at 110, 912 P.2d at 1339.

Itule's counsel did not respond to Cornerstone's request for an extension of the demand letter deadline until the deadline had passed. (Doc. 37-1 at 15.) When Itule's counsel received the offer of payment on the deadline, he did not respond to this admitted counteroffer (Doc. 55 ¶ 3; Doc. 58 ¶ 3), but instead filed suit against Contreras that day (Doc. 55 ¶ 18). The next day, Itule's counsel responded to Cornerstone, but rejected all their offers to settle, including rejecting a check for the full policy limit. (Doc. 37-1 at 15, 22, 26, 30, 35; Doc. 55 ¶ 14, 17.) Cornerstone never attempted to offer less than the policy limit, threatened to deny coverage, or attempted to break off settlement talks. Instead, it was Itule and his counsel that cut off Cornerstone's attempt at reasonable settlement negotiations. *See*, *e.g.*, Doc. 37-1 at 28.

Further, Cornerstone impleaded the policy limits in the underlying litigation. Recently, the Arizona Court of Appeals recognized the "legal minefield" of bad faith claims that insurers face, wherein "competing claims in excess of policy limits may result in a jury question [regarding bad faith] *regardless* of the course an insurer pursues." *McReynolds*, 225 Ariz. at 131, 235 P.3d at 284 (emphasis in original). For that reason, the Court of Appeals approved of several courses of action for an insurer when it faced claims above the policy limit and seeks to "discharge its duty to equally consider settlement offers." *Id*. at 130, 235 P.3d at 283. As the court explained,

> [u]nder these circumstances, [the] insurer could well have notified all of the potential claimants involved that the value of the claims would doubtless exceed policy limits, and invite them or their attorneys to participate jointly in efforts to reach agreement as to the disposition of the available funds. Alternatively, insurer could have attempted to settle claims within the policy limits as they were presented. Or as a third alternative, insurer could have promptly and in good faith commenced an interpleader action, and paid its policy limits into court.

*Id*. The present case presents both the second and third of these approved alternatives.

1    Here, Cornerstone filed an interpleader action 90 days after the Itule complaint was filed. (Doc. 1 ¶¶ 21–22; Doc. 25 ¶ 21–22; Doc. 54 ¶ 12.)  Cornerstone offered its policy limit and paid its policy limits into the court. (Doc. 54-1 at 28–38; *see* Doc. 1 ¶ 21–24, Doc. 25 at ¶ 21–24.)  This satisfies both the timely and good faith requirements for an interpleader action.  Cornerstone also attempted to settle claims within the policy limits as they were presented.   (Doc. 54. ¶ 4; Doc. 55 ¶ 12.)   There no requirement that an insurer successfully accept every offer of settlement the first time it is made. *McReynolds*, 225 Ariz. at 130, 235 P.3d at 283.  There is no dispute that Cornerstone attempted to settle the Itule claims, offering the full amount of the policy.

Despite Cornerstone's minor failures that caused Itule to reject Cornerstone's attempted acceptance of the settlement offer, there is no case law that would indicate this rises to a breach of Cornerstone's duty of good faith to Contreras.  Itule has presented no authority for the theory that failing to accept a settlement offer by the specific means set out by the injured party results in a breach of the insurer's good faith duties to consider the insured's interests when evaluating settlement offers.  Nor, has Itule set forth any facts which suggest that Cornerstone's one day delay in tendering the check in any way jeopardized Contreras, except that it failed to meet the arbitrary deadline set by counsel now asserting joint interests of Itule and Carpenter which relies on counsel's own refusal to accept the check.  No Cornerstone behavior rises to a level ever recognized by Arizona courts as sufficient for a breach of Cornerstone's duties to its insured.

### B.     Costs and Attorney Fees

Cornerstone has also requested an award of costs under A.R.S. § 12-341 and an award of attorney fees under A.R.S. § 12-341.01. (Doc. 1 at 7.)  Under section 12-341, the prevailing party in a civil action may recover costs expended or incurred. *Id.* The trial court has discretion to decide who is the prevailing party, but the award of costs to that party is mandatory. *McEvoy v. Aerotek, Inc.*, 201 Ariz. 300, 302, 34 P.3d 979, 981 (Ariz. Ct. App. 2001).  Cornerstone is the prevailing party here and will be awarded costs.

1  Under section 12-341.01 the court may award the successful party reasonable
2  attorney fees in "any contested action arising out of a contract, express or implied." *Id*.
3  The core issue here was whether Cornerstone breached its contractual obligations to
4  Contreras, making this an action arising out of contract. However, even in cases arising
5  out of contract, an award of attorney fees is permissive rather than mandatory. *See*
6  *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 394, 710 P.2d 1025, 1049 (1985);
7  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 956 (9th Cir. 2006). In
8  deciding whether to award attorney fees, a court should consider, among other factors:
9  (1) the merits of the unsuccessful party's claim, (2) whether the successful party's efforts
10 were completely superfluous in achieving the ultimate result, (3) whether assessing fees
11 against the unsuccessful party would cause extreme hardship, (4) whether the successful
12 party prevailed with respect to all relief sought, (5) whether the legal question presented
13 was novel or had been previously adjudicated, and (6) whether a fee award would
14 discourage other parties with tenable claims from litigating. *Assoc. Indemn. Corp. v.*
15 *Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985); *see Velarde v. PACE*
16 *Membership Warehouse, Inc.*, 105 F.3d 1313, 1319–20 (9th Cir. 1997) (applying the
17 factors); *Nationwide Mut. Fire Ins. Co. v. Jones*, 695 F. Supp. 2d 978, 986 (D. Ariz.
18 2010) (applying the factors in insurance context).

19  Cornerstone is the prevailing party in this contract action, and prevailed in all
20 aspects of the litigation. Itule's claim is not meritorious. However, assessing fees to Itule
21 would cause extreme hardship for him, considering the fact that he was injured in a car
22 accident for which he was apparently not at fault, and for which there does not appear to
23 be sufficient insurance funds available to pay all expenses. For this reason, the Court will
24 not grant an award of attorney fees in this case.

## CONCLUSION

26  Even examining all of the facts presented in the light most favorable to Itule, there
27 is no action by Cornerstone that would rise to a breach of its duties to Contreras. Because
28 no breach by Cornerstone of its contractual duties has been shown, Contreras is not

- 10 -

1  excused from her obligations under the cooperation clause of the Policy.  Thus, Contreras
2  breached the cooperation clause by confessing judgment and entering into the Irrevocable
3  Settlement Agreement.

4  **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the
5  Pleadings (Doc. 32) is **GRANTED**.  The Clerk of the Court is directed to **TERMINATE**
6  this action and enter judgment accordingly.

7  **IT IS FURTHER ORDERED** granting Cornerstone its costs pursuant to A.R.S.
8  § 12-341.01.

9  Dated this 30th day of September, 2014.

*A. Murray Snow*

G. Murray Snow
United States District Judge